**DOROTHY GURR and STANLEY GURR, Plaintiffs**

**v.**

**NEIL SCRATCH and SALA SCRATCH, Defendants**

High Court of American Samoa
Land and Titles Division

LT No. 26-94

April 26, 1995

Before RICHMOND, Associate Justice, BETHAM, Associate Judge, and
ATIULAGI, Associate Judge.

Counsel:       For Plaintiffs, Charles V. Ala`ilima
                For Defendants, Afoa L. Su`esu`e Lutu

Opinion and Order:

The parties to this action disagree as to the boundary line between a parcel
of land (Lot "G"), currently owned by plaintiffs Dorothy and Stanley Gurr
("the Gurrs"), and its adjacent parcel ("Lot S") to the southeast, presently
occupied by defendants Neil and Sala Scratch ("the Scratches") and owned
by Sala Scratch ("Sala"). This boundary dispute was tried on February 23
and 24, 1995. The parties were represented by counsel.

## FACTS

By warranty deed, dated May 23, 1977, and recorded May 25, 1977, the
original owner conveyed Lot S to Manu`a Dewees ("Dewees"). By
warranty deed, dated and recorded April 12, 1979, Dewees conveyed Lot
S to Roy J.D. and Koroseta V. Hall, Jr. ("the Halls"). By warranty deed,
dated and recorded July 25, 1990, the Halls conveyed Lot S to Sala.

When the Halls acquired Lot S in 1979, they had the land resurveyed.
This survey work was done by Meko L. Aiumu ("Aiumu"), a registered
surveyor in American Samoa and Manager of the Survey Branch,
Department of Public Works, American Samoa Government. Aiumu
determined that the legal description of Lot S contained in the original
owner's deed to Dewees and Dewees' deed to the Halls incorrectly located
most of Lot S within the northeasterly portion of a different, adjacent lot

15

to the southeast of Lot S, also owned by Sala. Aiumu then drafted a new legal description for Lot S, using concrete monuments he found on site. This new survey was used in Sala's deed from the Halls in 1990.

Aiumu plotted Lot S, using the northeast corner ("N.E. Cor.") as a starting point. He found a concrete monument at this corner. Aiumu then developed metes and bounds clockwise from the N.E. Cor. He ran the first boundary line to another existing concrete monument and continued at a slightly different angle to the southeast corner ("S.E. Cor."), where he discovered another concrete monument. He continued the next boundary line to the southwest corner ("S.W. Cor."), where he found another concrete monument. Then, Aiumu used two boundary lines to connect with a concrete monument at the northwest corner ("N.W. Cor."). Aiumu attempted to run the boundary line from the S.W. Cor. to the N.W. Cor. at the approximate angle described in Dewees' deed. This angle would not permit a straight boundary line between the two points. He, therefore, created a separate point ("Pt X") 17.29 feet from the N.W. Cor. and connected the S.W. Cor. to Pt X. Aiumu drove a galvanized pipe at Pt X. He then continued on to the N.W. Cor. Finally, Aiumu continued the angles of the eastern and western boundaries beyond the northern boundary of Lot S, and into the Aoloau paved road, and inserted surveyor nails into the center of the road on those lines.

Subsequent to the conveyance of Lot S to Sala, events obliterated the monuments at the N.E Cor., N.W. Cor., and Pt X. Using excavating equipment, the American Samoa Power Authority installed a pipeline near the boundary between Lot G and Lot S to provide water to a neighboring lot. A concrete slab was constructed on most of Lot S. Finally, the Scratches installed a chain-link fence running from the S.W. Cor. towards Pt. X and the N.W. Cor. This fence provoked the controversy now before the court about the exact location of the boundary line separating Lot G and Lot S.

The Scratches engaged Lawrence P. French ("French"), also a licensed surveyor in American Samoa, to resurvey Lot S for purposes of this action. Unquestionably, French undertook this task with thorough research and calculations. His work renders the precise location of the N.W. Cor. and Pt X uncertain, but also provides the best basis for the court's ultimate resolution of the location of the common boundary between Lot G and Lot S.

Using known corners of various surveyed lots within the tract of land

named Mapuga,"[1] French determined that the now unmarked point of beginning at the N.E. Cor. used by Aiumu was probably located either at the corner designated as D-1 or at the corner designated as D-1:2 as shown on Exhibit 23, which French prepared to illustrate his findings. Looking at a straight line between the still existing monument at the S.E. Cor. and the surveyor's nail in the road beyond the N.E. Cor. and, only noting the slight bend of 2 minutes 30 seconds in Aiumu's survey, we are satisfied that the N.E. Cor. was originally located at either point D-1, point D-1:2, or between these two points.

French also plotted Aiumu's metes and bounds clearly locating the disputed fence on Lot G, but failing to tie into the monuments presently existing at the S.E. Cor. and S.W. Cor.

Since the evidence does not indicate movement of the monuments at the S.E. Cor. and S.W. Cor. after Aiumu's discovery of them, we will reconstruct the boundary between Lot G and Lot S from the S.W. Cor. using the existing surveyor's nail beyond the N.W. Cor. as a reference point at the north end.[2] A straight line between the S.W. Cor. and the nail in the road beyond the N.W. Cor. closely resembles the original locations of both Pt. X and the N.W. Cor.

French found an orange surveyor's ribbon below the ground surface on the fence post closest to Pt. X. This post appears, however, to be at least three feet northwest of the boundary now being drawn by the court. Due to past excavations in this immediate area, we do not find the presence of this ribbon to be persuasive evidence of the original location of the boundary line.

On the evidence before us, we believe that the boundary line now being drawn by the court is fair and reasonable, especially in light of its proximity to the original locations of Pt. X and the N.W. Cor. This new straight line does not, and cannot, coincide with Aiumu's metes and bounds. However, we find that Aiumu's errors, if any, were negligible. The variance between the line now drawn by this court and Aiumu's line is slight and tolerable. The new line does not interfere with the concrete

---

[1] Ane Pili originally owned the 4.753 acre surveyed tract named "Mapuga." She subdivided and conveyed several lots within this tract, including Lot G and Lot S.

[2] We note the moderate bend of 1 degree 9 minutes 14 seconds at Pt X in Aiumu's survey, but it has no bearing on our decision due to the meager difference it makes in the boundary line.

slab, or any other existing use of Lot S by the Scratches. Their detriment is limited to relocating any encroaching portions of the fence from Lot G to Lot S.

## CONCLUSIONS AND ORDERS

The boundary between Lot G and Lot S is reestablished as a straight line from the S.W. Cor. to the surveyor's nail in the road beyond the N.W. Cor. Within the next 60 days, the parties' shall have this line resurveyed, with a new N.W. Cor. identified at the closest possible point along this line to the original N.W. Cor. and monumented in the field, and recorded with the Territorial Registrar. The parties shall share the cost of this resurvey, monumentation, and recordation equally. Within 60 days after the resurvey is recorded, the Scratches shall remove any portion of the encroaching fence from Lot G. If they choose to erect a fence along the new boundary, the Scratches shall ensure that this fence is located entirely within Lot S. The Scratches shall bear the cost of removing the existing fence and erecting any replacement fence.

It is so ordered.